## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| SUSAN ROBERTS, LYNNE HERMANN, and CYNTHIA HERNANDEZ, | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | :   NO. 3:08CV1356 (MRK) |
| | : |
| JERRY FARRELL, JR., in his official capacity as Commissioner of the Connecticut Department of Consumer Protection, | : |
| | : |
| | : |
| | : |
| | : |
| Defendant. | : |

### MEMORANDUM OF DECISION

Connecticut defines an "interior designer" as an individual "qualified by education, experience and examination who":

> (A) identifies, researches and creatively solves problems pertaining to the function and quality of the interior environment; and (B) performs services relative to interior spaces, including programming, design analysis, space planning and aesthetics, using specialized knowledge of non-load-bearing interior construction, building systems and components, building codes, equipment, materials and furnishings; and (C) prepares plans and specifications for non-load-bearing interior construction, materials, finishes, space planning, reflected ceiling plans, furnishings, fixtures and equipment relative to the design of interior spaces in order to enhance and protect the health, safety and welfare of the public.

Conn. Gen. Stat. § 20-377k.   Plaintiffs Susan Roberts, Lynne Herrmann, and Cynthia Hernandez each perform such interior design services in this State.   Thus, since 1982, Susan Roberts has operated an antique furniture and interior design business called the "Idea Factory" and has provided residential and commercial interior design services to clients in Connecticut and other states. *See* Pls.' Motion for Preliminary Injunction [doc. # 19] Ex. A ("Declaration of Susan Roberts") at ¶¶ 2, 7.  Since 2004, Lynne Hermann has operated an Interiors by Decorating Den franchise and has

provided residential interior design services in Connecticut.  *See id.* Ex. B ("Declaration of Lynne Herrmann") at ¶ 2.  Cynthia Hernandez operates an interior design business called "Ideal Interiors, LLC, d/b/a Interiors by Decorating Den" and provides residential interior design services in Connecticut.  *See id.* Ex. C ("Declaration of Cynthia Hernandez") at ¶¶ 3, 4.

Plaintiffs brought this action under 42 U.S.C. § 1983 against Defendant Jerry Farrell, Jr., Commissioner of the Connecticut Department of Consumer Protection, seeking declaratory and injunctive relief against the enforcement of a Connecticut law that Plaintiffs claim censors their truthful commercial speech by forbidding them from calling themselves "interior designers." Notably, the State does not regulate the practice of interior design, which means that Plaintiffs may, and they lawfully do, render interior design services to consumers in the State.  However, Connecticut is now the only state in the Nation to prohibit Plaintiffs from calling themselves "interior designers" or describing their services as "interior design," even though that is precisely the services Plaintiffs regularly and lawfully perform in the State.

The specific statutory provision that Plaintiffs challenge states as follows:

No person shall use the title "interior designer" or display or use any words, letters, figures, title, advertisement or other device to indicate that he is an interior designer, unless he (1) has obtained a certificate of registration as provided in sections 20-377k to 20-377v, inclusive; or (2) is an architect licensed in this state; or (3) has used or was identified by the title of "interior designer" for at least one year immediately preceding October 1, 1983.

Conn. Gen. Stat. § 20-377l.  Given that Plaintiffs do not fall within the second and third categories of individuals allowed to use the term "interior designer," Plaintiffs must obtain a certificate of registration as provided under the statutory scheme before they may refer to themselves as "interior designers."  Because none of the Plaintiffs has obtained the requisite certificate of registration, each

2

of them may perform interior design services in the State but may not call herself an "interior designer" or advertise or describe the work she regularly and lawfully perform as "interior design." According to Plaintiffs, this complete ban on their describing themselves as "interior designers" or their work as "interior design" violates their First and Fourteenth Amendment rights under the U.S. Constitution.  The Court agrees.

## I.

On January 14, 2009, Plaintiffs moved for a preliminary injunction to restrain the Commissioner from enforcing §§ 20-377l to 20-377v pending resolution of their case on the merits. After the Court's on-the-record telephonic conference with the parties on January 22, 2009, counsel agreed that it was both feasible and appropriate for Plaintiffs' case to proceed on an accelerated schedule to a final judgment on the merits in lieu of a ruling on Plaintiff's Motion for Preliminary Injunction [doc. # 19].  After engaging in expedited discovery, the parties informed the Court on April 15, 2009 that they foresaw two possible means of resolving this case: (1) a bench trial on the merits on the basis of stipulated facts and legal briefing from the parties; and (2) legislative action requested by Connecticut Attorney General Richard Blumenthal and Commissioner Farrell, which the parties agreed would moot Plaintiffs' constitutional challenge by changing the regulated term in § 20-377l from "interior designer" to "*registered* interior designer."  *See* Substitute for Raised S.B. 1002, as amended by Senate Amendment "B'" (LCO No. 6967).[1]   After again conferring with the

---

[1]  The proposed legislative amendment to § 20-377l states as follows:

No person shall use the title "registered interior designer" or display or use any words, letters, figures, title, advertisement or other device to indicate that such person is a registered interior designer, unless such person (1) has obtained a certificate of registration as provided in sections 20-377k to 20-377v, inclusive; or (2) is an architect licensed in this state.

parties during an on-the-record telephonic conference on April 27, 2009, the Court denied the Commissioner's motion to stay the proceedings until the Connecticut General Assembly considered the proposed legislative amendment.  The Commissioner stated he would continue to pursue the legislative amendment and, although the Court and the parties were optimistic that remedial legislation would pass the Connecticut General Assembly, the Court scheduled a preliminary injunction hearing immediately following the close of the legislature's regular session.

Although the proposed amendment to § 20-377l passed the Connecticut Senate by a unanimous vote of 36-0 on May 26, 2009, the Connecticut House of Representatives did not consider the amendment before the end of the regular legislative session on June 3, 2009.  Thus, the Court proceeded with the preliminary injunction hearing scheduled for June 5, 2009.  At the hearing, the parties agreed that there was no need for additional discovery in the case and that apart from the continued potential for a legislative amendment to § 20-377l during the General Assembly's special session, there was no reason not to move to a final adjudication of Plaintiffs' claims.  The parties also agreed that the Court could decide the case on the basis of their factual stipulations and that the Court should proceed to a final hearing on the merits, rather than taking up the request for a preliminary injunction.  That same day, the Commissioner represented to the Court and the parties that given his commitment to seeking a legislative amendment, the Department of Consumer Protection would not enforce § 20-377l pending those efforts and at least until December 1, 2009.  *See* Attachment to Order [doc. # 35] (Letter from Commissioner dated June 5, 2009).  Therefore, the parties stipulated to an order of this Court restraining the Commissioner from enforcing § 20-377l pending the Court's final decision on the merits and until further order of the Court.  *See* Order [doc. # 35].

4

Although the Court, as well as the parties and their counsel, remained hopeful that the General Assembly would expeditiously act on the proposed amendment during its special session, the General Assembly has unfortunately not acted on the legislation.  Therefore, the Court turns to the merits of Plaintiffs' claim.  Before proceeding further, however, the Court pauses briefly to commend the parties, their counsel, and the Attorney General and Commissioner on their cooperation during this case as well as their commitment to seeking a legislative resolution of Plaintiffs' claim.  The Court had hoped that the legislature would solve this issue on its own, and the Court and the parties have waited patiently for legislative action.  Plaintiffs filed this action almost one year ago, in early-September 2008, and initially moved for preliminary relief in January 2009.  They have shown the utmost patience as the Commissioner sought to work with the legislature to amend § 20-377l.  However, in a telephonic conference with the parties on June 29, 2009, counsel for the Commissioner could not provide any definite timetable for legislative change.  Thus, the Court and Plaintiffs have now waited for almost an additional month without any further action by the General Assembly as to § 20-377l.  Although an order restraining the Commissioner from enforcing § 20-377l has remained in effect since June 5, 2009, given that there is no indication when, or even if, the General Assembly will act on a legislative fix, Plaintiffs deserve a ruling on their claim so they may move forward with their livelihoods.  The State has now had ample time to enact any legislative solution to this controversy.

After considering the parties' briefs and stipulations of fact, as well as the skilled arguments of both counsel at the June 5, 2009 hearing, the Court hereby GRANTS Plaintiffs' request for permanent injunctive relief as well as a declaratory judgment that § 20-377l is unconstitutional.  For the reasons that follow, the Court finds that § 20-377l violates Plaintiffs' First and Fourteenth

Amendment rights under the U.S. Constitution by impermissibly restricting their commercial speech.

## II.

Under Connecticut law, any person may perform interior design work in the state without first obtaining a license from or registering with the State.[2]  Plaintiffs Susan Roberts, Lynne Hermann, and Cynthia Hernandez lawfully perform interior design services in Connecticut, and each Plaintiff considers herself to be, and wishes to identify herself as, an "interior designer."  There are four ways to be registered as an interior designer in Connecticut:  (1) pass either of two national examinations (the National Counsel for Interior Design Qualification (NCIDQ) Examination or the Interior Design Society's Uniform National Examination); (2) be licensed as an architect in Connecticut; (3) be registered as an interior designer in another state having registration standards equal to or greater than those in Connecticut; or (4) demonstrate that the registrant has used or was identified by the title of "interior designer" for one year or more immediately preceding October 1, 1983 and obtained registration prior to July 1, 1991.  Conn. Gen. Stat. § 20-377l.

As to those individuals qualifying by examination, the NCIDQ examination and the Uniform National Examination are formulated and administered by private bodies over which the State of Connecticut has no direct control.  Both the NCIDQ and the Interior Design Society establish their own eligibility requirements to sit for those examinations.  The State of Connecticut likewise has no direct control over those eligibility requirements.  The examinations test knowledge and skills relating to consumer protection, public health, life safety, and welfare, among other subjects.  Subject matters covered in the examinations include professional ethics, contract documents and

---

[2]  The Court takes the following facts from the parties' Stipulations of Fact dated May 7, 2009.  *See* Pls.' Supplemental Brief in Support of Motion for Preliminary Injunction [doc. # 32] Ex. A.

administration, building codes, design standards and guidelines for persons with disabilities, and environmental standards and practices.  The tests are comprised of three parts – two half-day multiple choice sections (Principles and Practices of Interior Design and Contract Documents and Administration) and a full day practicum (Schematics and Design Development) – each of which must be passed in order to be certified as having passed the examination.  In order to sit for the examinations, a person must possess a combination of interior design-related education and supervised interior design-related work experience.  Typically, six years are required to meet the work and education experience necessary to sit for the examination.  Conversely, those individuals falling under the "grandfather" provision can be registered as an "interior designer" in Connecticut without having studied interior design in school, without having passed any examination, and without demonstrating any specific work experience.

There are approximately 617 registered interior designers listed on the Department of Consumer Protection's roster of active registrants.  Plaintiffs reviewed approximately 418 of those files and determined that of the registrants whose files were reviewed, approximately 1/4 were registered by virtue of having taken the NCIDQ examination; approximately 1/4 were registered by virtue of having used the title "interior designer" for at least one year prior to October 1, 1983; and approximately 1/2 were registered by virtue of being state-licensed architects.  Although it maintains a roster of state-registered interior designers, the Department of Consumer Protection does not affirmatively disclose to the public (i.e., without being specifically asked) which interior designers obtained their registrations by taking a licensing exam, which were "grandfathered-in" without an exam under the provisions of § 20-377l(3), which were registered by virtue of being state-licensed architects, and which were registered by virtue of the state-reciprocity provision.  A list of registered

interior designers is available on the Department of Consumer Protection's website.  Any person may contact the Department of Consumer Protection to determine a registrant's qualifications for registration, including whether the registrant is registered by virtue of having used the title "interior designer" for at least one year prior to October 1, 1983.  Since July 1, 1991, no individual has been registered with the Department of Consumer Protection by virtue of that person having used or having been identified by the title of "interior designer" for one year or more immediately preceding October 1, 1983.

Despite lawfully performing interior design services in Connecticut, Plaintiffs are prohibited from referring to themselves as "interior designers" or the work they lawfully perform as "interior design," because they are not registered with the Department of Consumer Protection under § 20-377l and do not meet the "grandfathering" provision of § 20-377l(3) and Conn. Agencies Regs. § 20-377t-1(h)(5).[3]  But for § 20-377l, each Plaintiff would refer to herself as an "interior designer" in her business dealings and would advertise herself as an "interior designer" and her services as "interior design."  The parties are not aware of any evidence that any member of the public in Connecticut assumes that a person who refers to herself as an "interior designer" or advertises herself as an "interior designer" possesses any particular set of credentials and/or qualifications.  In addition, the

_____

[3]  The Commissioner takes the position that Ms. Roberts may legally refer to herself as an "interior designer" without registering with the Department because she previously referred to herself as an "interior designer" for at least one year immediately preceding October 1, 1983, the date that § 20-377l became effective.  At oral argument, Plaintiff's counsel argued that this did not moot the case as to Ms. Roberts since the Department had before told her in 1988 that she was unable to use the title "interior designer" and as such, could easily return to that position and hold her in violation of the law.  In addition, Ms. Roberts did not register under the grandfathering provision by July 1, 1991.  At oral argument, the Commissioner expressed no final opinion as to whether the Court should deem Ms. Roberts's claim moot.  In view of the Court's decision, there is no need to consider whether Ms. Roberts's claim is moot given the Commissioner's current position.

parties are not aware of any evidence that any consumer has ever been deceived, misled, or otherwise injured by a person's use of the term "interior designer." However, such injuries may have occurred without being reported to the Department. At oral argument, counsel for the Commissioner acknowledged that if an individual deceived or misled consumers in connection with interior design work, the Department of Consumer Protection could regulate that conduct independent of the interior design statute.

The Commissioner has enforced the interior design registration law, including collecting annual registration fees of $150 per registrant, investigating alleged violations of the registration law, and advising persons who are not registered with the Department that they may not refer to themselves as interior designers. Any person who knowingly, willfully, or intentionally, violates Connecticut's interior design law shall be fined not more than $500 or imprisoned for up to one year, or be both fined and imprisoned. Conn. Gen. Stat. § 20-377v. The Department of Consumer Protection may identify and refuse registration to applicants who have self-reported prior felony convictions or whose registrations in other jurisdictions were refused, suspended, or revoked.

Nineteen states regulate interior design-related titles but not interior design work. Of those states, only three – Connecticut, Oklahoma, and Texas – regulated the title "interior designer." The remaining 16 states regulate the more specialized terms "licensed interior designer," "registered interior designer," or "certified interior designer." Oklahoma and Texas recently passed legislation to amend their existing laws to regulate use of the term "registered interior designer," instead of "interior designer." *See* 2009 Okla. Sess. Law Serv. Ch. 184 (West) (eff. July 1, 2009); Tex. Occ. Code § 1053.151 (eff. May 12, 2009). At oral argument, counsel thus agreed that Connecticut is now the only state in the Nation to regulate the title "interior designer." The Commissioner does not

contend that regulating the more specialized terms "licensed interior designer," "registered interior designer," or "certified interior designer" – rather than "interior designer" – would be ineffective in advancing whatever government interests may be implicated by Connecticut's interior design registration law.  The parties agree that Plaintiffs' claims against the Commissioner would be mooted if § 20-377l were amended by asserting the word "registered" in front of "interior designer."

### III.

Both parties agree that this case is about whether § 20-377l impermissibly restrains Plaintiffs' commercial speech in violation of the First and Fourteenth Amendments.  They also agree that the Court's determination of that issue is governed by the Supreme Court's decision in *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980).  As the Second Circuit noted in *Bad Frog Brewery, Inc. v. New York State Liquor Authority*, 134 F.3d 87 (2d Cir. 1998), "*Central Hudson* sets forth the analytical framework for assessing governmental restrictions on commercial speech." *Id.* at 97.  Under *Central Hudson*, the Court must examine the following factors in determining whether Connecticut law violates Plaintiffs' constitutional right to freedom of expression: (1) whether Plaintiffs' expression is protected by the First Amendment because it is commercial speech that concerns lawful activity and is not misleading; (2) whether the asserted government interest in regulating the protected speech is substantial; (3) whether the regulation directly advances the governmental interest asserted; and (4) whether the regulation is not more extensive than necessary to serve that interest.  *See Central Hudson*, 447 U.S. at 566.  It is the Commissioner's burden to justify the challenged speech restriction.  *See Edenfield v. Fane*, 507 U.S. 761, 770 (1993); *Int'l Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67, 70 (2d Cir. 1996).  Provided Plaintiffs' speech is protected by the First Amendment, they will prevail if the Commissioner fails

to meet any one of the remaining *Central Hudson* factors.

Although the Court ultimately bases its decision on *Central Hudson*'s final factor – whether the regulation is more extensive than necessary to serve the State's asserted interest – the Court will address each of the factors in turn because Plaintiffs raise substantial and legitimate questions regarding the Commissioner's ability to satisfy his burden as to the other *Central Hudson* factors. Ultimately, however, even assuming *arguendo*, and without deciding, that the Commissioner could demonstrate that Connecticut's interest in restricting the use of the title "interior designer" is substantial and that § 20-377l directly advances that interest, the Court concludes that the Commissioner cannot show that the challenged title restriction is no more extensive than necessary to serve the State's asserted interest.

The Commissioner concedes that Plaintiffs may lawfully perform interior design services, but he argues that Plaintiffs' would-be use of the term "interior designer" merits no First Amendment protection because it is misleading and thus fails the first prong of the *Central Hudson* test. According to the Commissioner, the legislature has invested the term "interior designer" with a specific meaning, and because each of the Plaintiffs does not meet the requirements for, and thus lacks a certificate of, state registration, each Plaintiff does not meet the statutory definition of an "interior designer."   Therefore, whenever a Plaintiff describes herself as an "interior designer," she engages in untruthful and misleading speech in violation of the first prong of the *Central Hudson* analysis.

As Plaintiffs persuasively argue, and as the Fifth Circuit recently held in an essentially identical case involving Texas's restriction on the title "interior designer," the Commissioner's argument is untenable.  *See Byrum v. Landreth*, --- F.3d --- , 2009 WL 1068435 (5th Cir. Apr. 22,

2009).   This is so because adopting the Commissioner's position would eviscerate the First Amendment's protection of commercial speech by making the determination of what is "misleading" dependent upon the parameters of the challenged restriction.  *See Byrum*, 2009 WL 1068435, at *3. There is a circularity to the Commissioner's reasoning that condemns it – the State defines "interior designer" as someone who registers and anyone who calls herself an interior designer without registering necessarily is misleading the public and cannot challenge the law because her speech is misleading.  By this logic, a state would always be insulated from any constitutional challenge to a commercial speech restriction because the plaintiffs would always fail the first prong of *Central Hudson*.

As the Eleventh Circuit stated in response to the identical argument in a case challenging Florida's restriction of the title "psychologist," a court is not bound by the state's definition of a term when determining whether speech is misleading.  *See Abramson v. Gonzalez*, 949 F.2d 1567, 1576 (11th Cir. 1992).  The Eleventh Circuit made clear that "as long as the plaintiffs do not hold themselves out as *licensed* professionals, they are not saying anything untruthful, for they are in fact psychologists and are permitted to practice that profession under current state law."  *Id*.  So, too, in this case.  The term "interior designer" is not a term of art and it is not inherently misleading.  It merely describes a person's trade or business.  *See Byrum*, 2009 WL 1068435, at *4.  Indeed, at oral argument counsel had difficulty explaining to the Court the difference between the services rendered by an "interior decorator" or  a "designer" (Plaintiffs may use either term to describe their work) and an "interior designer" (a term Plaintiffs may not use).  Plaintiffs are not holding themselves out to be *registered* interior designers.  Rather, they merely seek to describe themselves and their work by use of words that even the Commissioner acknowledges accurately describe the professional services

12

that Plaintiffs lawfully render to consumers in the State.

The Commissioner relies on *American Academy of Pain Management v. Joseph*, 353 F.3d 1099 (9th Cir. 2004), in support of his position.  In that case, the Ninth Circuit examined the Medical Board of California's prohibition against physicians' and surgeons' use of the term "board certified" unless the certifying organization met certain statutory requirements.  *See id.* at 1102.  There, the Ninth Circuit held that an individual physician's or organization's use of the term "board certified" was inherently misleading when their credentials did not meet the statutory requirements for use of the term.  However, the Ninth Circuit emphasized in its decision that "'[b]oard certification' is a term of art that the [American Board of Medical Specialities] popularized among physicians and has come to designate a certain level of qualification."  *Id.* at 1104.  The court further stated that the term's "specialized meaning was emphasized in numerous affidavits that were filed with the district court."  *Id.*  It also noted that the National Committee on Quality Assurance, which accredits U.S. health maintenance organizations, and the Joint Commission on Accreditation of Health Care Organizations, which accredits U.S. hospitals and health care facilities, both gave the term a recognized meaning.  Thus, the Ninth Circuit concluded that "the term that the Medical Board of California and the California Attorney General seek to protect, 'board certified,' is a term with an established meaning connoting a high level of specialized skill and proficiency."  *Id.* at 1105.

*American Academy of Pain Management* is distinguishable from this case for two primary reasons.  First, unlike the term "board certified," which the Ninth Circuit found to have a pervasive and well-established meaning throughout the medical profession, there has been no showing that the term "interior designer" is a well-established term of art in the design industry that connotes specialized skills or proficiency.  In fact, the parties stipulate that they are "not aware of any evidence

that a member of the public in Connecticut who hears a person refer to him- or herself as an 'interior designer' assumes that that person possesses a particular set of credentials and/or qualifications." Stipulations of Fact [doc. # 32] Ex. A at ¶ 6.  In addition, the Commissioner conceded at oral argument that apart from the statutory definition that Connecticut gave to the term in 1983, "interior designer" is a generic term that holds no specific meaning.  At least in these circumstances, the accurate use of a descriptive and generic term to describe one's services cannot become inherently misleading merely because the State has decided to appropriate the term and require state registration as a condition to its use.  *See Byrum*, 2009 WL 1068435, at *4 ("There is no fixed definition of the covered occupations. . . . Where no fixed definition of the services exists, there can hardly be a claim that the public is being misled about particular individuals' truthfully expressed level of expertise or services."); *id.* (finding "use of the banned terms by unlicensed interior designers [ ] at most potentially misleading"); *see also Parker v. Commonwealth of Ky. Bd. of Dentistry*, 818 F.2d 504, 510 (6th Cir. 1987) (finding that a dentist's use of the term "orthodontics" is not itself deceptive).

Second, unlike the title restriction that Connecticut places on Plaintiffs, the physicians in *American Academy of Pain Management* could still use the title "physician" even if they were not "board certified" under California's statutory scheme.  Thus, the term "board certified" simply modified the term "physician," and when taken together, would be akin to such terms as "licensed interior designer," "certified interior designer," or "registered interior designer."  The California law at issue in *American Academy of Pain Management* did not strip physicians of their title of "physician" simply because they were not "board certified."  Nor did the Ninth Circuit hold that it was inherently misleading for physicians to call themselves "physicians" simply because they lacked board certification.  *See American Academy of Pain Management*, 353 F.3d at 1107-08. Section 20-

14

377l differs from the California statute in *American Academy of Pain Management* because it prohibits Plaintiffs from using the most accurate title for their professional design services, services that the State allows them to lawfully perform. Therefore, under *Central Hudson*, Plaintiffs' expression is entitled to First Amendment protection because it is commercial speech that is neither unlawful nor inherently misleading.

Next, the Court considers whether the Commissioner has demonstrated that the State's asserted interest in protecting consumers from being misled as to the title "interior designer" is substantial, and whether that interest is directly advanced by the restriction on use of the title "interior designer" under § 20-377l. *See Central Hudson*, 447 U.S. at 566. It is important to note that the Commissioner does not assert that the State has a substantial interest in the delivery of interior design-related services; nor could he, given the State's failure to regulate the practice of interior design in Connecticut. Thus, the State does not seek to prevent anyone from offering interior design services to consumers or from performing interior design work in Connecticut. Rather, the Commissioner argues that Connecticut has a substantial interest in securing the special meaning that it has assigned to the title "interior designer." In addition, the Commissioner claims that the State has a substantial interest in protecting consumers from individuals who would otherwise call themselves "interior designers" despite failing to meet specific educational and experiential requirements or to submit to the State's regulatory process.

Plaintiffs concede that consumer protection can be a substantial state interest, but they argue that the Commissioner's asserted interests neither protect consumers nor respond to a demonstrated need for commercial regulation in this field. Although the parties stipulate that they "are not aware of any evidence that any consumer has ever been deceived, misled, or otherwise injured by a person's

15

use of the term 'interior designer' to describe him- or herself," Stipulations of Fact [doc. # 32] Ex. A at ¶ 10, Plaintiffs acknowledge that consumers may not have reported to the Commissioner all title-related injuries they may have suffered.  However, Plaintiffs take issue with what they deem is a complete lack of evidence regarding the need for a total ban on their use of the title "interior designer," and thus, the Commissioner's assertion that the State's interest in regulating Plaintiffs' speech is substantial and directly advanced by § 20-377l.  Moreover, Plaintiffs argue that the existence of the grandfather provision under § 20-377l(3) undermines the State's asserted interest in protecting consumers from being misled or deceived by unregistered individuals who would otherwise call themselves "interior designers" even though they lack the requisite professional credentials required for registration under state law.  According to Plaintiffs, individuals who were grandfathered in under § 20-377l(3) need not have any specific education or experience and despite this, are able to call themselves "interior designers" without having to make any sort of public disclosure that they have not attained certain educational requirements that other "interior designers" have obtained.  Thus, say Plaintiffs, Connecticut's restriction of "interior designer" cannot convey a certain level of education or experience to consumers or assist consumers in making informed decisions when hiring design professionals.

Although the Commissioner admonishes Plaintiffs for seeking specific evidence that demonstrates that the State's asserted interest in protecting consumers from their commercial speech is substantial and directly advanced by the title restriction in § 20-377l, the Supreme Court has made clear that a State must do more than invoke abstract ideals or speculation to satisfy its burden under *Central Hudson*.  *See Florida Bar v. Went for It, Inc.*, 515 U.S. 618 (1995).  In *Went for It*, the Supreme Court examined a Florida rule that prohibited personal injury lawyers from sending direct-

16

mail solicitations to accident victims and their relatives within 30 days of an accident.  *See id.* at 620.

There, the Supreme Court noted that it had previously accepted that "States have a compelling

interest in the practice of professions within their boundaries, and . . . as part of their power to protect

the public health, safety, and other valid interests they have broad power to establish standards for

licensing practitioners and regulating the practice of professions."  *Id.* at 625.  However, after

recognizing the State's interest in protecting the public, the Supreme Court emphasized that "the

State must demonstrate that the challenged regulation advances the Government's interest in a direct

and material way," which requires it to show "that the harms it recites are real and that its restrictions

will in fact alleviate them to a material degree."  *Id.* at 625-26 (quotation marks omitted); *see also*

*Central Hudson*, 447 U.S. at 564; *Bad Frog Brewery*, 134 F.3d at 98.  A state could meet this burden

by relying on empirical data, studies, or anecdotes (whether in-state or extra-jurisdictional) or by

reference to history, consensus, and common sense.  *Id.* at 628.  In rejecting the plaintiffs' challenge

in *Went for It*, the Supreme Court cited many examples where the state had targeted "a concrete,

nonspeculative harm."  *Id.* at 626-29.

The Court recognizes that the Commissioner need not cite empirical evidence in support of

its regulation.  However, this case is unlike *Went for It* in its complete lack of any "evidence" (even

construed most broadly) to support the Commissioner's asserted need to protect consumers from the

use of the term "interior design" by individuals who lawfully perform those services in the State.

Neither common sense, history or even consensus supports this restriction, *see Bad Frog Brewery*,

134 F.3d at 100; indeed, Connecticut is now the only state in the Nation with a law restricting use

of the term "interior design."  Therefore, this case strikes the Court as much more similar to the ban

on solicitation by certified public accountants that the Supreme Court struck down in *Edenfield v.*

17

*Fane*, 507 U.S. 761 (1993), precisely because Florida offered *no* evidence in support of its speech restriction. *See id.* at 771. The only evidence the Commissioner points to in support of the State's asserted need to protect consumers from use of the term "interior design" is a study from Texas that the Fifth Circuit explicitly rejected as insufficient in *Byrum*. *See Byrum*, 2009 WL 1068435, at *3-4 (assigning no probative value to the study because of its flawed methodology). Moreover, the Court seriously doubts the Commissioner's argument that § 20-377l may operate as a prophylactic rule under *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447 (1978), because as the Supreme Court recognized in *Fane*, "*Ohralik* in no way relieves the State of the obligation to demonstrate that it is regulating speech in order to address what is *in fact* a serious problem and that the preventative measure it proposes will contribute in a material way to solving that problem." 507 U.S. at 776.

As a consequence, the Court has considerable doubt that § 20-377l addresses a substantial state interest. Moreover, even assuming, without deciding, that Connecticut's interest in protecting consumers from the misuse of the title "interior designer" is substantial, the Court is also skeptical of the Commissioner's ability to show that the title restriction directly advances the State's asserted interest. *See Bad Frog Brewery*, 134 F.3d at 100 ("The truth of these propositions is not so self-evident as to relieve the state of the burden of marshalling some empirical evidence to support its assumptions."). However, the Court need not decide these issues because even assuming – without deciding – that the Commissioner has shown a substantial interest in protecting consumers from misuse of the title "interior designer" that is directly advanced by the title restriction in § 20-377l, the Court concludes that such a restriction is not reasonably tailored to serve the State's asserted interest.

As the Supreme Court itself has noted, the "critical inquiry" in determining the legality of a

restriction on commercial speech is whether the "complete suppression of speech ordinarily protected by the First Amendment is no more extensive than necessary to further the State's interest." *Central Hudson*, 447 U.S. at 569-70. Thus, in *Central Hudson*, the Supreme Court explained that "[t]he State cannot regulate speech that poses no danger to the asserted state interest . . . nor can it completely suppress information when narrower restrictions on expression would serve its interest as well." *Id.* at 565. Therefore, this Court must examine carefully the "fit" between Connecticut's asserted interest in protecting consumers from being misled and the scope of its restriction on Plaintiffs' lawful commercial speech. While the Court need only find that the "fit" is reasonable, not perfect, "the existence of numerous and obvious less-burdensome alternatives to the restriction on commercial speech . . . is certainly a relevant consideration in determining whether the 'fit' between ends and means is reasonable." *Went for It*, 515 U.S. at 632. As with the other *Central Hudson* factors, it is the Commissioner's burden to demonstrate that § 20-377l is reasonably tailored to serve Connecticut's interest in consumer protection. *Central Hudson*, 447 U.S. at 570; *Bad Frog Brewery*, 134 F.3d at 98. For several reasons, the Court concludes that the Commissioner has not satisfied his burden.

First, when Connecticut Attorney General Blumenthal and Commissioner Farrell requested the assistance of the Co-Chairs of the Connecticut General Law Committee with respect to their proposed amendment to § 20-377l, they stated that, in their view, "the title 'registered interior designer' will more accurately convey to the public both the existence of a registration regime and that any person using such a title has complied with that regime. At the same time, there would be no barrier to entry for individuals who would like to practice interior design and call themselves interior designers, but who are not registered or eligible for registration." Pls.' Suppl. Br. in Supp.

of Mot. for Prelim. Inj. [doc. # 32] Ex. B (Letter from Attorney General Richard Blumenthal and Commissioner Jerry Farrell to Senator Thomas Colapietro and Representative Jim Shapiro dated April 14, 2009). Moreover, in the parties' stipulation, the Commissioner stated that he "does not contend that regulating the more specialized terms 'licensed interior designer,' 'registered interior designer,' or 'certified interior designer' – rather than 'interior designer' by itself – would be ineffective in advancing whatever government interest may be implicated by Connecticut's interior design registration law."   *See id.* Ex. A at ¶ 14.  Although the Court appreciates the candor of the Attorney General and the Commissioner, as well as their attempt to seek a legislative solution to this case, these statements concede, as they must, that there is an "obvious less-burdensome alternative" to the current restriction on Plaintiffs' commercial speech.

As the Supreme Court instructed in *Went for It*, a court may consider the existence of a less-burdensome alternative to the challenged restriction as relevant in determining whether the fit between the State's ends and means is reasonable.  The Court believes that this consideration becomes even more relevant where the Attorney General and Commissioner have acknowledged that "[s]imilar requirements [to Connecticut's] in other states have been uniformly struck down as an unconstitutional infringement of First Amendment rights," Pls.' Suppl. Br. in Supp. of Mot. for Prelim. Inj. [doc. # 32] Ex B, and they have continued to advocate for a less-burdensome alternative to the current restriction.  *See* Attachment to Order [doc. # 35].

Second, as the Court has previously noted, the Commissioner has stated that the State has an interest not in the delivery of interior design services but rather in safeguarding the statutory meaning assigned to "interior designer" and in protecting consumers from being misled by the improper use of that title.  However, as the Court emphasized at oral argument, the term "interior

20

designer" is a generic term that conveys no particular educational or experiential credentials on the part of an individual.  This is especially true given that one-quarter of registered interior designers in Connecticut fall under the grandfather provision in § 20-377l(3) and therefore may lack the education, experience, and certification held by the remaining percentage of "interior designers" registered with the State.

If the State were seeking to convey the existence of a regulatory regime in this field, then a term such as "licensed interior designer" or "registered interior designer" would far better serve that interest, as the rest of the states who have decided to regulate this field have concluded.  In fact, this is precisely what Connecticut has done in other fields of endeavor, many of which also have practice restrictions.[4]  Amending Connecticut's title restriction of interior designers in a similar manner would more accurately convey that registered or certified individuals had submitted to the State's oversight.  In addition, the use of narrower terms such as "licensed interior designer," "certified interior designer," or "registered interior designer" would actually expand consumer choice and further consumer protection because it would alert Connecticut residents to the existence of a statutory registration or certification scheme, while simultaneously allowing Plaintiffs  to compete in the market for interior design services.  As such, the States's asserted interest could be more effectively met by a more limited regulation.

---

[4] For example, Conn. Gen. Stat. § 20-206p states that "[n]o person who is not certified by the Department of Public Health as a dietitian-nutritionist shall represent himself as being so certified . . . ."  Other statutes incorporate both title and practice restrictions.  *See, e.g.*, Conn. Gen. Stat. § 20-362(a) ("No person shall engage in, practice, or offer to perform the work of a sanitarian, as defined in section 20-358, unless he is licensed pursuant to section 20-361."); § 20-369 ("No person . . . shall engage in the practice of landscape architecture in this state or use the title 'landscape architect' or display or use any words, letters, figures, title, signs, seal, advertisement or other device to indicate that such person practices or offers to practice landscape architecture in this state, unless such person has first secured a license as provided in this chapter.").

When the Fifth Circuit examined the "fit" between what it assumed for purposes of its appeal was Texas's substantial interest in protecting consumers and its title restriction on the use of "interior designer," the court noted that simply including terms like "licensed," "certified," or "registered" before "interior designer" would ensure a reasonable "fit" between the state regulation and the nearly identical commercial speech at issue in that case. *See Byrum*, 2009 WL 1068435, at *5; *see also Central Hudson*, 447 U.S. at 570-71 (rejecting the defendant's complete ban on plaintiffs' ability to advertise because it had not demonstrated that its interest could not be adequately protected by a more limited regulation); *Parker*, 818 F.3d at 511 ("[A]n outright ban on the use of specific, nonmisleading terms is simply not narrowly tailored to meet the state's concern."). Ensuring a reasonably-tailored restriction is especially important in a case such as this one because Connecticut has not asserted any interest in restricting Plaintiffs' ability to render interior design services; rather, its restriction on Plaintiffs' professional endeavors concerns only their commercial speech that accurately describes the services they lawfully render in the State. As the Eleventh Circuit aptly stated in *Abramson*, which rejected Florida's title restriction on the use of "psychologist" as an unconstitutional burden on commercial speech,

> the state's interest in protecting its citizens from incompetent health professionals . . . can be furthered by more, not less disclosure. If the state is concerned about the dangers posed by "unqualified persons," the current system whereby anyone may practice psychology seems an odd one indeed. Nonetheless, as long as that remains the system in Florida, the defendant must adopt narrowly tailored means for directly advancing the state's interest while preserving the plaintiff's right to disseminate truthful commercial speech.

949 F.2d at 1578. Just as the Fifth Circuit found in *Byrum*, the Sixth Circuit found in *Parker*, and the Eleventh Circuit found in *Abramson*, the Court finds that the State's complete ban on Plaintiffs' use of a broad, generic professional title is more extensive than necessary to further any interest

22

properly advanced by the State.  *See also Bad Frog Brewery*, 134 F.3d at 101 ("NYSLA's complete statewide ban on use of Bad Frog's labels lacks a 'reasonable fit' with the state's asserted interest in shielding minors from vulgarity, and NYSLA gave inadequate consideration to alternatives to this blanket suppression of commercial speech.").  Because the Commissioner has not demonstrated a reasonable "fit" between § 20-377l and the commercial speech at issue, he has failed to satisfy his burden under *Central Hudson*.

## IV.

Accordingly, the Court concludes, and declares, that § 20-377l of the Connecticut General Statutes, as currently written, violates Plaintiffs' First and Fourteenth Amendment right to expression under the U.S. Constitution.  The Commissioner is permanently enjoined from enforcing § 20-377l. The Clerk shall enter judgment for Plaintiffs and close this file.


IT IS SO ORDERED.


_____Mark R. Kravitz_____
United States District Judge


Dated at New Haven, Connecticut: **June 30, 2009.**

23